IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| SHELDON STEIN | ) | CASE NO. |
| Chapter 7 Bankruptcy Trustee | ) | |
| Bankruptcy Estate of Deborah Harbert | ) | JUDGE: |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | **COMPLAINT FOR DAMAGES** |
| | ) | **AND REINSTATEMENT** |
| BECKETT AIR, INC. | ) | |
| c/o Fauver Corporate Services, Inc. | ) | **JURY DEMAND ENDORSED** |
| 409 East Ave Ste A, | ) | **HEREIN** |
| Elyria, Ohio 44035 | ) | |
| | ) | |
| And | ) | |
| | ) | |
| DAVE PEIRSON | ) | |
| 37850 Beckett Pkwy | ) | |
| North Ridgeville, Ohio 44039 | ) | |
| | ) | |
| And | ) | |
| | ) | |
| JACKIE JONES | ) | |
| 37850 Beckett Pkwy | ) | |
| North Ridgeville, Ohio 44039 | ) | |
| | ) | |
| | ) | |
| Defendants. | ) | |

Plaintiff, Sheldon Stein, as the duly appointed, qualified and acting Trustee in the Chapter 7 Bankruptcy filed by Deborah Harbert, by and through undersigned counsel, as his Complaint against the Defendants, states and avers the following:

**PARTIES AND VENUE**

1. Stein is the duly appointed, qualified and acting Trustee in the Chapter 7 Bankruptcy filed by Deborah Harbert.

2. Stein is the party in interest in this case.

3. Harbert is a resident of the City of Avon Lake, County of Lorain, State of Ohio.

4. Beckett Air is a corporation, licensed and registered to do business in Ohio, with its principal place of business located at 37850 Beckett Pkwy North Ridgeville, Ohio 44039

5. Peirson is a resident of the state of Ohio.

6. Peirson is and was at all times hereinafter mentioned a supervisor and/or manager for Beckett, who acted directly or indirectly in the interest of Beckett in relation to its employees.

7. At times relevant herein, Peirson supervised and/or controlled Harbert's employment with Motto and was empowered to take tangible employment actions against Harbert.

8. At all times referenced herein, Peirson was an employer within the meaning of Ohio R.C. § 4112.01 (A)(2).

9. Jones is a resident of the state of Ohio.

10. Jones is and was at all times hereinafter mentioned a supervisor and/or manager for Beckett, who acted directly or indirectly in the interest of Beckett in relation to its employees.

11. At times relevant herein, Jones supervised and/or controlled Harbert's employment with Motto and was empowered to take tangible employment actions against Harbert.

12. At all times referenced herein, Jones was an employer within the meaning of Ohio R.C. § 4112.01 (A)(2).

13. All of the material events alleged in this Complaint occurred in Lorain County.

## JURISDICTION AND VENUE

14. This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 in that Harbert is alleging federal law claims regarding the deprivation of Harbert's rights under the Family Medical Leave Act. 29 U.S.C § 2615

15. This Court has supplemental jurisdiction over Harbert's state law claims pursuant to 28 U.S.C. § 1367, as Harbert's state law claims are so closely related to her federal law claims

that they form part of the same case or controversy under Article III of the United States Constitution.

16. Venue is proper in this Court pursuant to 28 U.S.C. § 1391.

17. All material events alleged in this Complaint occurred in Lorain County.

18. Venue is proper in this district pursuant to 28 U.S.C. § 1391(a) because a substantial part of the events or omissions giving rise to this action, including the unlawful employment practices alleged herein, occurred in this district.

## FACTS

19. Harbert is a former employee of Beckett.

20. Beckett hired Harbert on April 26, 2011, as a production worker.

21. At all times relevant herein, Peirson was Harbert's direct supervisor.

22. Harbert has severe anxiety and depression. ("Medical Conditions")

23. Harbert's Medical Conditions affect her neurological body system.

24. Harbert's Medical Conditions are a mental or psychological disorder, and specifically an intellectual disability.

25. Harbert's Medical Conditions relate to an emotional and/or mental disability.

26. Harbert's Medical Conditions are a disease.

27. Harbert's Medical Conditions substantially limits one or more of her major life activities.

28. Harbert has a record of her Medical Conditions.

29. As a result of her Medical Conditions, Harbert is and was considered disabled within the meaning of R.C. § 4112.01(A)(13).

30. Harbert's Medical Conditions were serious health conditions that qualified Harbert for FMLA protection.

31. As of April 2012, Harbert had worked for Beckett for at least 12 calendar months.

32. As of April 2012, Harbert had worked at least 1,250 hours for Beckett during the previous 12 months.

33. As of April 2012, Beckett had 50 or more employees in 20 or more workweeks in the current or preceding calendar year.

34. As of April 2012, Beckett employed 50 or more employees within 75 miles of its location where it employed Harbert.

35. As of April 2012, Beckett was a qualified employer under the FMLA.

36. As of April 2012, Harbert was a qualified employee under the FMLA.

37. In or around April 2012, Harbert filed for intermittent FMLA leave for her Medical Conditions. ("FMLA Request")

38. During the FMLA Request, Harbert disclosed her Medical Conditions to Beckett.

39. Following the FMLA Request, Beckett perceived Harbert as being disabled.

40. Following the FMLA Request, Beckett perceived that Harbert's Medical Conditions constituted a mental impairment.

41. Following the FMLA Request, Beckett perceived Harbert's Medical Conditions to substantially impair one or more of her major life activities, including working.

42. Despite her actual or perceived disabling condition, Harbert was still able to perform the essential functions of her job.

43. Beckett approved the 2012 FMLA Request.

44. Beginning in or around April 2012, Harbert began using intermittent FMLA leave. ("FMLA Use")

45. Harbert's FMLA Use consisted of Harbert using FMLA leave one or two days a month.

46. Between 2012 and 2018, Beckett regularly renewed Harbert's intermittent FMLA.

47. Between 2012 and 2018, Beckett approved Harbert's FMLA Use.

48. On or around February 26, 2018, Harbert's hands were crushed in a piece of machinery while working at Beckett. ("Crushed Hands Incident")

49. Beckett completed an incident report following the Crushed Hands Incident.

50. Beckett had knowledge of the Crushed Hands Incident.

51. Harbert's hand did not regain full functionality following the Crushed Hands Incident. ("Crushed Hands")

52. Harbert disclosed her Crushed Hands to Beckett.

53. Harbert's Crushed Hands affect her muscular-skeletal body system.

54. Harbert's Crushed Hands are a physical disorder, and specifically a physical disability.

55. Harbert's Crushed Hands relates to a physical disability.

56. Harbert's Crushed Hands are a physical impairment.

57. Harbert's Crushed Hands substantially limit one or more of her major life activities.

58. Harbert has a record of her Crushed Hands.

59. As a result of her Crushed Hands, Harbert is and was considered disabled within the meaning of R.C. § 4112.01(A)(13).

60. In the alternative, following the Crushed Hands Incident, Beckett perceived Harbert as being disabled.

61. In the alternative, Beckett perceived that Harbert's Crushed Hands constituted a physical impairment.

62. In the alternative, Beckett perceived Harbert' Crushed Hands to substantially impair one or more of her major life activities, including working.

63. Despite this actual or perceived disabling condition, Harbert was still able to perform the essential functions of her job.

64. As a result of the Crushed Hands Incident, Harbert was unable to work from February 26, 2018, until mid-March 2018. ("Leave of Absence")

65. Harbert did not use FMLA leave for her Leave of Absence.

66. Harbert returned to work in March 2018.

67. As a result of the Crushed Hands Incident, Harbert's Medical Conditions were exacerbated when returning to work. ("Exacerbated Anxiety")

68. In or around April 2018, Harbert renewed her intermittent FMLA leave with a Human Resources employee named Mary Beth Casey. ("2018 Renewal")

69. Following the 2018 Renewal, Casey told Harbert that Harbert did not need to submit any additional FMLA forms.

70. Following the 2018 Renewal, Harbert increased her FMLA use due to the Exacerbated Anxiety ("Increased FMLA").

71. Harbert's Increased FMLA consisted of Harbert using FMLA leave three to five days a month.

72. Despite increasing her use of FMLA leave, Harbert did not exhaust the FMLA leave that was available to her.

73. In or around the winter of 2018, Beckett hired Jones as a human resources representative.

74. As a human resources representative, Jones had access to Harbert's personnel file, which included records of Harbert's Medical Conditions, FMLA Use, and Crushed Hands.

75. Jones had knowledge of Harbert's Medical Conditions, FMLA Use, and Crushed Hands.

6

76. In or around late January 2019, Peirson and Jones suspended Harbert, allegedly due to excessive absences. ("Suspension")

77. Defendants' assertion of unapproved absenteeism has no basis in fact.

78. Defendants' assertion of unapproved absenteeism did not actually motivate Defendants' decision to suspend Harbert.

79. Defendants' assertion of unapproved absenteeism was insufficient to motivate the suspension of Harbert.

80. Defendants' assertion of absenteeism was a pretext to suspend Harbert.

81. To the extent Harbert had missed work prior to the Suspension, such absences should have been covered by FMLA leave because they were connected to Harbert's serious health conditions.

82. The Suspension was an adverse action against Harbert.

83. The Suspension was an adverse employment action against Harbert.

84. Defendants did not issue suspensions to non-disabled employees who utilized protected leave.

85. Defendants issued the Suspension because Harbert is disabled.

86. Defendants issued the Suspension in retaliation for Harbert's Increased FMLA.

87. Defendants issued the Suspension to discourage Harbert from utilizing FMLA leave in the future.Harbert complained to Peirson and Jones that she believed the Suspension was improper, undeserved, and motivated by discrimination.

88. Harbert reminded Peirson and Jones that the alleged absences upon which the Suspension was based, were covered by FMLA leave.

89. Harbert complained to Peirson and Jones that the Suspension was based on her FMLA leave.

7

90. Harbert complained to Peirson that the Suspension was based on her Medical Conditions, Crushed Hands, and Increased FMLA. ("Discrimination Complaint").

91. Peirson had a duty to report the Discrimination Complaint to Beckett.

92. Peirson did report the Discrimination Complaint to Beckett.

93. Beckett has a policy to investigate complaints of unlawful discrimination. ("Investigation Policy")

94. Pursuant to the Investigation Policy, an investigation should include interviewing the complainant.

95. Pursuant to the Investigation Policy, an investigation should include interviewing the subject of the complaint.

96. Pursuant to the Investigation Policy, an investigation should include interviewing the subject of the reported discrimination.

97. Pursuant to the Investigation Policy, an investigation should include interviewing witnesses to the reported discrimination.

98. Pursuant to the Investigation Policy, an investigation should include getting a written statement from the complainant.

99. Pursuant to the Investigation Policy, an investigation should include getting a written statement from the subject of the complaint.

100. Pursuant to the Investigation Policy, an investigation should include getting a written statement from the subject of the reported discrimination.

101. In response to Harbert's Discrimination Complaint, Beckett did not interview Harbert.

102. In response to Harbert's Discrimination Complaint, Beckett did not interview Peirson.

103. In response to Harbert's Discrimination Complaint, Beckett did not interview Jones.

104. In response to Harbert's Discrimination Complaint, Beckett did not interview witnesses.

105. In response to Harbert's Discrimination Complaint, Beckett did not get a written statement from Harbert.

106. In response to Harbert's Discrimination Complaint, Beckett did not get a written statement from Peirson.

107. In response to Harbert's Discrimination Complaint, Beckett did not get a written statement from Jones.

108. In response to Harbert's Discrimination Complaint, Beckett did not get a written statement from witnesses.

109. Beckett did not investigate Harbert's Discrimination Complaint.

110. Beckett did not take action to correct the conduct Harbert complained of in the Discrimination Complaint.

111. Beckett upheld the Suspension.

112. Beckett did not discipline Peirson or Jones for issuing the Suspension.

113. By not disciplining Peirson or Jones at all based on the Discrimination Complaint, Beckett ratified Peirson and Jones' conduct.

114. By not disciplining Peirson or Jones at all based on the Discrimination Complaint, Beckett allowed Peirson and Jones' conduct to continue.

115. In or around February 2019, Harbert returned from the Suspension.

116. Harbert used FMLA leave in or around February 2019.

117. On or around March 5, 2019, Harbert met with Peirson and Jones. ("March Meeting")

118. During the March Meeting, Peirson and Jones informed Harbert that Defendants were terminating her employment due to alleged excessive absences.

119. Defendants' assertion of unapproved absenteeism has no basis in fact.

120. Defendants' assertion of unapproved absenteeism did not actually motivate Defendants' decision to terminate Harbert.

121. Defendants' assertion of unapproved absenteeism was insufficient to motivate the termination of Harbert.

122. Defendants' assertion of unapproved absenteeism was pretext to terminate Harbert.

123. To the extent Harbert had missed work, such absences should have been covered by FMLA leave because they were connected to Harbert's serious health condition.

124. Defendants did not terminate non-disabled employees who utilized protected leave.

125. Defendants did not terminate employees who did not make complaints similar to the Discrimination Complaint.

126. Defendants terminated Harbert because Harbert is disabled.

127. Defendants terminated Harbert in retaliation for Harbert's Increased FMLA.

128. The attendance violations Defendants counted against Harbert included absences that should have been covered by Harbert's FMLA leave.

129. Had Defendants provided Harbert with all FMLA leave she was entitled to, Harbert would not have incurred sufficient attendance violations to justify her termination.

130. Upon information and belief, Defendants permitted similarly situated, non-disabled employees to retain their employment despite having attendance issues that were similar to or worse than Harbert's.

131. Upon information and belief, Defendants permitted similarly situated employees who did not use FMLA leave, to retain their employment despite having attendance issues that were similar to or worse than Harbert's.

132. Upon information and belief, subsequent to Harbert's termination, Defendants hired a non-disabled person to replace Harbert.

133. The above facts demonstrate that Defendants engaged in a pattern and practice of disability discrimination.

134. The above facts demonstrate that Defendants engaged in a pattern and practice of unlawful retaliation.

135. The above facts demonstrate that Defendants engaged in a pattern and practice of unlawful FMLA retaliation.

136. There was a causal connection between Harbert's disabilities and Defendants' termination of Harbert.

137. There was a causal connection between Harbert's FMLA use and Defendants' termination of Harbert.

138. There was a causal connection between Harbert's Discrimination Complaint and Defendants' termination of Harbert.

### **COUNT I: RETALIATION IN VIOLATION OF THE FMLA**
**(Against Defendant Beckett Only).**

139. Harbert restates each and every prior paragraph of this Complaint as if it were fully restated herein.

140. Beckett is a covered employer under the FMLA.

141. During her employment, Harbert qualified for FMLA leave.

142. During her employment, Beckett approved Harbert's use of FMLA leave.

143. During her employment, Harbert utilized FMLA leave.

144. After Harbert utilized her qualified FMLA leave, Defendants retaliated against her.

145. Beckett retaliated against Harbert by issuing the Suspension.

146. Beckett retaliated against Harbert for exercising her rights under the FMLA by terminating her employment.

147. Beckett willfully retaliated against Harbert in violation of U.S.C. § 2615(a).

148. As a direct and proximate result of Beckett's wrongful conduct, Harbert is entitled to all damages provided for in 29 U.S.C. § 2617, including liquidated damages, costs, and reasonable attorney's fees.

## COUNT II: UNLAWFUL INTERFERENCE WITH FMLA RIGHTS
**(Against Defendant Beckett Only).**

149. Harbert restates each and every prior paragraph of this Complaint as if it were fully restated herein.

150. Pursuant to 29 U.S.C. § 2601 *et seq.*, covered employers are required to provide employees job-protected unpaid leave for qualified medical and family situations.

151. Beckett is a covered employer under the FMLA.

152. During her employment, Harbert qualified for FMLA leave.

153. During her employment, Harbert attempted to request FMLA leave by asking Defendants to allow her to use approved FMLA leave.

154. Beckett issued the Suspension in order to discourage Harbert from utilizing her rights under the FMLA.

155. Beckett interfered with Harbert's FMLA rights when they punished Harbert for absences that should have been covered by Harbert's FMLA leave.

156. Beckett interfered with Harbert's FMLA rights by not allowing Harbert to use FMLA for absences associated with her serious medical conditions.

157. Beckett unlawfully interfered with Harbert's exercise of her rights under the FMLA in violation of Section 105 of the FMLA and section 825.220 of the FMLA regulations.

158. Beckett's acts of suspending, and terminating Harbert up during her FMLA leave violated and interfered with Harbert 's FMLA rights.

159. Beckett violated section 825.300(c)(1) of the FMLA and interfered with Harbert 's FMLA rights when Beckett did not honor Harbert 's approved use of FMLA leave.

160. As a direct and proximate result of Beckett' conduct, Harbert is entitled to all damages provided for in 29 U.S.C. § 2617, including liquidated damages, costs and reasonable attorney's fees.

### COUNT III: DISABILITY DISCRIMINATION IN VIOLATION OF R.C. § 4112.02.
**(Against All Defendants)**

161. Harbert restates each and every prior paragraph of this Complaint as if it were fully restated herein.

162. Harbert suffers from the Medical Conditions and Crushed Hands.

163. Harbert is disabled.

164. In the alternative, Defendants perceived Harbert as being disabled.

165. Harbert's conditions constituted physical and mental impairments.

166. Harbert's conditions substantially impaired one or more of her major life activities including working.

167. Defendants perceived Harbert's condition to substantially impair one or more of her major life activities, including working.

168. Defendants treated Harbert differently than other similarly-situated employees based on her disabling conditions.

169. Defendants treated Harbert differently than other similarly-situated employees based on her perceived disabling condition.

170. On or about March 5, 2019, Defendants terminated Harbert's employment without just cause.

171. Defendants terminated Harbert's employment based on her disability.

172. Defendants terminated Harbert's employment based on her perceived disability.

173. Defendants violated R.C. § 4112.02 when it discharged Harbert based on her disability.

174. Defendants violated R.C. § 4112.02 when it discharged Harbert based on her perceived disability.

175. Defendants violated R.C. § 4112.02 by discriminating against Harbert based on her disabling condition.

176. Defendants violated R.C. § 4112.02 by discriminating against Harbert based on her perceived disabling condition.

177. As a direct and proximate result of Defendant's conduct, Harbert suffered and will continue to suffer damages.

### COUNT IV: UNLAWFUL RETALIATION IN VIOLATION OF 4112.02(I).
(Against All Defendants)

178. Harbert restates each and every prior paragraph of this complaint, as if it were fully restated herein.

179. As a result of the Defendant's discriminatory conduct described above, Harbert complained about the disability discrimination she was experiencing.

180. Subsequent to Harbert's Discrimination Complaint, Defendants terminated Harbert.

181. Defendant's actions were retaliatory in nature based on Harbert's opposition to the unlawful discriminatory conduct.

182. Pursuant to R.C. §4112.02(I), it is an unlawful discriminatory practice "to discriminate in any manner against any other person because that person has opposed any unlawful discriminatory practice defined in this section…"

183. As a direct and proximate result of Defendant's retaliation against Harbert, she suffered and will continue to suffer damages.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff requests judgment in her favor against Defendants, containing the following relief:

(a) An order directing Defendants to place Harbert in the position she would have occupied but for Defendants' discriminatory, retaliatory and/or otherwise unlawful treatment of her, as well as to take such affirmative action as is necessary to ensure that the effects of these unlawful employment practices and other unlawful conduct are eliminated and do not continue to affect Harbert;

(b) An award of damages in an amount to be determined at trial, plus prejudgment interest, to compensate Harbert for all monetary and/or economic damages, including, but not limited to, the loss of past and future income, wages, compensation, job security and other benefits of employment;

(c) Awarding against each Defendant compensatory and monetary damages to compensate Harbert for lost wages, emotional distress, and other consequential damages, in an amount to be proven at trial;

(d) An award of damages in an amount to be determined at trial, plus prejudgment interest, to compensate Harbert for all non-monetary and/or compensatory damages, including, but not limited to, compensation for his severe mental anguish and emotional distress, humiliation, depression, embarrassment, stress and anxiety, loss of self-esteem, self-confidence and personal dignity, and emotional pain and suffering and any other physical or mental injuries;

(e) An award of damages in an amount to be determined at trial, plus prejudgment interest, to compensate Harbert for harm to her professional and personal reputation and loss of career fulfillment;

(f) An award of damages for any and all other monetary and/or non-monetary losses suffered by Harbert in an amount to be determined at trial, plus prejudgment interest;

(g) An award of punitive damages;

(h) An award of costs that Harbert has incurred in this action, as well as Harbert's reasonable attorneys' fees to the fullest extent permitted by law; and

(i) Awarding such other and further relief that this Court deems necessary and proper.

Respectfully submitted,

*/s/ Samuel Robb*
Chris P. Wido (0090441)
    Trial Attorney
Samuel B. Robb (0099035)
**The Spitz Law Firm, LLC**
25200 Chagrin Boulevard, Suite 200
Beachwood, OH 44122
Phone: (216) 291-4744
Fax:   (216) 291-5744
Email: chris.wido@spitzlawfirm.com
        sam.robb@spitzlawfirm.com

*Attorneys For Plaintiff Sheldon Stein/Deborah Harbert*

## JURY DEMAND

Plaintiff Sheldon Stein/Deborah Harbert demands a trial by jury by the maximum number of jurors permitted.

*/s/ Samuel Robb*
Chris P. Wido (0090441)
    Trial Attorney
Samuel B. Robb (0099035)
**The Spitz Law Firm, LLC**